UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER BAHAMONDE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM SERVICES LLC, et al.,<br><br>Defendants. | Case No. 25-cv-03499-JSC<br><br>**ORDER RE DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY THE ACTION PENDING ARBITRATION**<br><br>Re: Dkt. No. 15 |

Plaintiff employees bring this putative class action against Amplio Logistics ("Amplio") and Amazon.com Services, LLC ("Amazon") for alleged violations of California labor laws. (Dkt. No. 1-5.)[1] Amplio now moves to compel arbitration and Amazon joins its motion. (Dkt. Nos. 15, 16.) After careful consideration of the parties' briefing, and having had the benefit of oral argument on July 10, 2025, the Court GRANTS in part and DENIES in part Amplio's motion to compel arbitration.

## BACKGROUND

### I.     Complaint Allegations

Plaintiff Javier Bahamonde "worked for Defendants from approximately April 12, 2023, through approximately April 15, 2023." (Dkt. No. 1-5 ¶ 2.) Plaintiff Dajane Sanders "worked for Defendants from approximately November of 2022, through approximately June of 2023." (*Id.* ¶ 3.) Plaintiffs' job duties included "delivering packages, and loading containers with merchandise." (*Id.* ¶¶ 2-3.) Defendants committed several California Labor Code violations

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

against Plaintiffs and putative class members, including failing to pay overtime wages, provide meal and rest breaks, and properly itemize wage statements. (*Id.* ¶¶ 15-24.)

## II.     Arbitration Agreements

Plaintiffs worked as delivery drivers for Amplio, which is based in Antioch and "makes local-only deliveries in California for its clients," one of which is Amazon. (Dkt. No. 15-1 ¶¶ 2, 5, 7.) When Amplio hired Plaintiffs, they both signed arbitration agreements titled "Mutual Agreement to Individually Arbitrate Disputes" (the "arbitration agreement" or the "agreement").[2] (Dkt. Nos. 15-2, 15-5.) As part of Amplio's onboarding process, delivery drivers "register with Amazon as a delivery driver for Amplio, and review/accept the Agreement, among other things." (*Id.* ¶ 7.) The arbitration agreement does not expire upon termination of employment, rather it "shall survive the term of Employee's employment." (Dkt. No. 15-2 at 4; Dkt. No. 15-5 at 4.) In relevant part, the agreement provides:

> MANDATORY ARBITRATION. THE EMPLOYEE AND COMPANY AGREE THAT ANY COVERED CLAIM (DEFINED BELOW), WHETHER BASED IN CONTRACT, TORT, STATUTE, COMMON LAW, FRAUD, MISREPRESENTATION OR ANY OTHER LEGAL OR EQUITABLE THEORY, SHALL BE SUBMITTED TO INDIVIDUAL BINDING ARBITRATION.

(Dkt. No. 15-2 at 2; Dkt. No. 15-5 at 2.) Covered claims include:

> [A]ll past, current, and future grievances, disputes, claims, issues, or causes of action (collectively, "claims") under applicable federal, state or local laws, arising out of or relating to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties ….

(Dkt. No. 15-2 at 2; Dkt. No. 15-5 at 2.) And the agreement further specifies covered claims include "all claims involving minimum wages, overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks." (Dkt. No. 15-2 at 2; Dkt. No. 15-5 at 2.)

---

[2] Because both agreements contain the same exact language and provisions, the Court refers to the two agreements in the singular.

The agreement also includes class action waivers. (Dkt. No. 15-2 at 3; Dkt. No. 15-5 at 3.) They waive "(a) class action, collective action, or consolidated action procedures" and "(b) representative action procedures" so that "the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person." (Dkt. No. 15-2 at 3; Dkt. No. 15-5 at 3.)

Finally, the agreement states any unenforceable provisions are severable. (Dkt. No. 15-2 at 4; Dkt. No. 15-5 at 4.)

**ANALYSIS**

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The United States Supreme Court recognizes a "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (noting "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, under the FAA, courts must direct parties to proceed to arbitration should it determine: (1) a valid arbitration agreement exists; and (2) "the agreement encompasses the dispute at issue." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (internal citation omitted).

**I.     Whether FAA § 1 Exemption Applies**

Section 1 of the FAA creates an exemption to the FAA's general rule of applicability for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. So, "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S.

3

1    105, 119 (2001). However, "[a] transportation worker need not work in the transportation industry
2    to fall within the exemption from the FAA provided by § 1 of the Act." *Bissonnette v. LePage*
3    *Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). Determining application of the exemption to a
4    specific class of workers involves a two-step analysis. *Southwest Airlines Co. v. Saxon*, 596 U.S.
5    450, 455-56 (2022). First, the Court must "defin[e] the relevant 'class of workers' to which
6    [Plaintiffs] belong[]." *Id*. at 456. In so doing, the Court considers "the actual work that the
7    members of the class, as a whole, typically carry out … not what [the employer] does generally."
8    *Id.* Next, the Court determines whether that "class of workers [is] directly involved in transporting
9    goods across state or international borders." *Id.* at 457. To be "directly involved" in interstate
10   commerce and fall under § 1's exemption, that class of workers "'must at least play a direct and
11   "necessary role in the free flow of goods" across borders.'" *Bissonnette*, 601 U.S. at 256 (2024)
12   (quoting *Saxon*, 596 U.S. at 458 (quoting *Circuit City*, 532 U.S. at 121)).

### A. Step 1: Defining the Class of Workers

At the first step, the class of employees is defined as delivery drivers who make deliveries for Amplio's clients exclusively within California.

Amplio's operations manager attests Amplio "is a delivery service based in Antioch, California that makes local-only deliveries in California." (Dkt. No. 15-1 ¶ 2.) "As a Delivery Service Partner, Amplio hires drivers to deliver packages to Amazon customers." (*Id.* ¶ 2.) Plaintiff Sanders attests when she was hired, she "was informed that [her] job duties would include loading delivery trucks with packages and delivering these packages." (Dkt. No. 17-1 ¶ 2; *see also* Dkt. No. 17-2 ¶ 2 (same for Plaintiff Bahamonde).) She further attests her duties included "picking up packages from the warehouse to put onto [her] vehicle, delivering the packages in [her] vehicle across various locations in California, and unloading those packagages[*sic*] when [she] [] reached [her] destination." (Dkt. No. 17-1 ¶ 3.)

Because Plaintiff Sanders and Amplio attest delivery drivers, as a class, deliver packages, the class of workers under the § 1 analysis is defined as Amplio delivery drivers who make deliveries for Amplio's clients exclusively within California.

//

4

### B.      Step 2: Whether the Class is Directly Involved in Interstate Commerce

A class of workers is "directly involved" in interstate commerce and thus falls under § 1's exemption if the workers "'at least play a direct and "necessary role in the free flow of goods" across borders.'" *Bissonnette*, 601 U.S. at 256 (quoting *Saxon*, 596 U.S. at 458 (quoting *Circuit City*, 532 U.S. at 121)). Before *Saxon,* the Ninth Circuit held "§ 1 exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines." *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020). After *Saxon*, the Ninth Circuit reaffirmed *Rittman*, holding "*Saxon* is not inconsistent, let alone clearly irreconcilable, with *Rittman*." *Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023), *cert. denied sub nom. Domino's Pizza, LLC v. Carmona*, 144 S. Ct. 1391 (2024). Specifically, the Ninth Circuit held a "pause in the journey of the goods at the warehouse alone [does not] remove them from the stream of interstate commerce." *Id.* So, "delivery drivers who transported goods from Amazon warehouses to in-state consumers were exempt from the FAA under § 1." *Id.* at 1137 (citing *Rittmann*, 971 F.3d at 915); *see also Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1162 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 165 (2024) (holding workers are exempt even when they fulfill "admittedly small but nevertheless 'direct and necessary' role in the interstate commerce of goods").

Amplio's delivery drivers are directly involved in interstate commerce. Plaintiffs attest Amplio drivers deliver goods with out-of-state addresses to in-state consumers. (Dkt. No. 17-1 ¶¶ 3, 7.) Although Amplio does not concede that its drivers deliver packages originating out-of-state, it does not contest Plaintiffs' evidence. (*See* Dkt. No. 15-1 ¶ 2 ("Amplio's delivery drivers pick up packages at Amazon facilities in California and deliver the packages to Amazon customers locally. When Amplio's drivers pick up packages from Amazon delivery stations, the packages are already unloaded and waiting at the station. Amplio has never been involved in the logistics process of any packages crossing borders; nor does Amplio facilitate customers ordering packages from Amazon.").) And, in any event, it could not in good faith dispute that some of the packages its drivers deliver originate outside of California.

Accordingly Amplio's drivers are what the *Rittmann* court deemed "last leg" delivery

drivers. *Rittmann*, 971 F.3d at 915. In *Rittmann*, the court considered whether AmFlex drivers, who contracted with Amazon to "make 'last mile' deliveries of products from Amazon warehouses to the products' destinations," fell within § 1's FAA exemption. *Id.* at 907. There, Amazon argued these drivers were not § 1 exempt transportation workers because they were involved in "purely intrastate activities" when making last leg deliveries. *Id.* at 909. But the Ninth Circuit rejected this argument and held "§ 1 exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines." *Id.* at 915. *Rittmann* surveyed state and federal cases interpreting § 1's language and found "[f]ederal district courts and state courts have also understood § 1 not to require that a worker cross state lines." *Id.* at 911. Further, courts interpreting similar statutory language had not limited that language to instances where workers crossed state lines. *Id.* at 912-13 (surveying interpretations of FELA, the Clayton Act, and the Robinson-Patman Acts). As the *Carmona* court later reiterated, "[n]othing in *Saxon* undermines that reasoning." *Carmona*, 73 F.4th at 1138.

  Amplio laments "*Carmona* was wrongly decided and violated the Supreme Court's clear command to revisit its Section 1 exemption caselaw after *Saxon*, 142 S. Ct. 1783 (2022)." (Dkt. No. 15 at 12-13.) But this federal district court does not have the discretion to decide *Carmona* was wrong. *See Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it"). Amplio's reliance on *Bissonnette* somehow rendering *Carmona* invalid is equally unavailing. Amplio fails to acknowledge that Ninth Circuit precedent interpreting federal law is binding on the district courts of this Circuit absent a United States Supreme Court decision that "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the case are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Bissonnette* held it would not decide whether the plaintiffs there were "not 'engaged in foreign or interstate commerce' within the meaning of § 1 because they deliver baked goods only in Connecticut." *Bissonnette*, 601 U.S. at 256. So, *Carmona* is not "clearly irreconcilable" with *Bissonnette*. Under current Ninth Circuit law, Amplio's drivers are exempt under § 1.

//

### C. Plaintiff Bahamonde

Amplio separately argues Plaintiff Bahamonde is not exempt because he himself never delivered packages for the company even though he was training and was hired to be a delivery driver. (Dkt. No. 15 at 12.) But in determining whether § 1 applies, the Court asks whether the "*class* of workers [is] directly involved in transporting goods across state or international borders," not whether the individual worker who belongs to that class actually engaged in the activity. *Saxon*, 596 U.S. at 457 (emphasis added). Courts considering whether § 1 applies to exempt a plaintiff regularly focus on what the class of workers *as a whole* does, not whether specific individuals may differ. *See Carmona*, 73 F.4th at 1137-38 (considering delivery drivers as a class). And Plaintiff Bahamonde was hired and trained to engage in the same exact activity the rest of the class engaged in, so he is still part of a "class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

\* \* \*

Plaintiffs belong to a "class of workers engaged in foreign or interstate commerce" and § 1's exemption therefore applies.

## II. Whether the Agreement is Enforceable Under California Law

When "the FAA is inapplicable, our analysis is exclusively guided by California law." *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal. App. 5th 1056, 1070 (2019). And "[i]n keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (2012).

Plaintiffs assert their claims are exempt from arbitration under California Labor Code § 229 and California Labor Code § 432.6.

### A. California Labor Code § 229

"Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code § 229. So, "Section 229 authorizes lawsuits for unpaid wages even if the parties agreed to arbitrate these claims." *Muller*, 34 Cal. App. 5th at 1070

7

(citing Cal. Lab. Code § 229).  Section 229 applies only "if a cause of action seeks to collect due and unpaid wages pursuant to sections 200 through 244." *Lane v. Francis Cap. Mgmt.*, 224 Cal. App. 4th 676, 684 (2014).

Plaintiffs' fifth, sixth, and seventh causes of action seek recovery of penalties, not unpaid wages, and as such are not actions "for the collection of due and unpaid wages" under § 229. *Lane*, 224 Cal. App. 4th at 684.  And Plaintiffs' first, eighth, and tenth causes of action do not arise from California Labor Code §§ 200 through 244, so they cannot form the basis for their § 229 claim.  *Id.* (holding the language in § 229 that it applies to actions "to enforce the provisions of *this article*" limit the statute's application to "article 1 of division 2, part 1 chapter 1 of the Labor Code, encompassing sections 200 through 244.") (emphasis added).  Similarly, Plaintiffs' second cause of action for unpaid minimum wages is brought under Labor Code sections 1197 and 1199 and so § 229 does not apply.  Plaintiffs also cite § 218.6 in their second cause of action, but this provision only provides for costs and attorneys' fees and "[a]s those remedies are not 'due and unpaid wages,' the citation to those Labor Code sections does not bring the cause of action within the scope of section 229." *Lane*, 224 Cal. App. 4th at 684 n.2.

Plaintiffs' third and fourth causes of action under Labor Code § 226.7 for missed meal periods and rest breaks are not actions seeking unpaid wages as defined by the statute.  In *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012), the California Supreme Court held an action under § 226.7 was *not* an action brought "for the nonpayment of wages" within the meaning of Labor Code § 218.5 (providing for attorneys' fees and costs). *Id.* at 1255. The Court reasoned "Section 226.7 is not aimed at protecting or providing employees' wages.  Instead, the statute is primarily concerned with ensuring the health and welfare of employees by requiring the employers provide meal and rest periods as mandated by the IWC."  So, the Court concluded, an action brought pursuant to section 226.7, "is brought for the *nonprovision of meal and rest periods,* not for the 'nonpayment of wages.'" *Id.*  Since § 226.7 is not an action "brought for the nonpayment of wages," it is also not an action "for the collection of due and unpaid wages" and so § 229 does not apply.  *See Lane*, 224 Cal. App. 4th at 684 (holding a section 226.7 claim does not fall within the § 229 arbitration exemption because "'a section 226.7 claim is not an action brought for

1    nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks'") (quoting

2    *Kirby*, 53 Cal. 4th at 1256-57); *Muller*, 34 Cal. App. 5th at 1056 (holding that while a court

3    properly retained jurisdiction of an unpaid wages claim under California Labor Code § 226.2, it

4    also properly remanded to arbitration the plaintiff's remaining claims, including for "unpaid rest

5    breaks," and "missed meal periods," because the claims did not fall within § 229).

6          Plaintiffs' reliance on *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93, 102

7    (2022) as somehow upending *Kirby* is unpersuasive. In *Naranjo*, the California Supreme Court

8    held the premium pay remedy for a section 226.7 meal and rest break violation is a "wage" "that

9    must be reported on statutorily required wage statements during employment (Lab. Code, § 226)

10   and paid within statutory deadlines when an employee leaves the job." *Id.* at 102. The Court

11   expressly upheld *Kirby* and explained that whether section 218.5 applies turns on "the nature of

12   the underlying legal violation the action seeks to remedy, not the form of relief that might be

13   available to cure that violation." *Id.* at 111-12. The Court reasoned that "to say that a section

14   226.7 remedy is a wage . . . is not to say that the *legal violation* triggering the remedy is

15   nonpayment of wages, as opposed to the deprivation of meal or rest breaks." *Id.* (cleaned up).

16   Section 229, like section 218.5, turns on the characterization of the legal violation the action seeks

17   to remedy. And that legal violation is the nonprovision of meal and rest periods. *Kirby*, 53 Cal

18   4th at 1255; *Naranjo*, 13 Cal. 5th at 111. So, § 229 does not apply. Indeed, almost every federal

19   court to consider the issue since *Naranjo* has held § 229 does not apply to claims under 226.7 for

20   meal and rest break violations. *See Morales v. United States Dist. Ct. for Cent. Dist. of California,

21   Los Angeles*, No. 24-536, 2024 WL 3565262, at *3 (9th Cir. July 29, 2024); *Mitchell v. Lineage

22   Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1145 (E.D. Cal. 2025); *Saul v. Lineage Logistics

23   Servs. LLC*, No. 24-cv-01331-DJC-CSK, 2025 WL 637056, at *8 (E.D. Cal. Feb. 27, 2025);

24   *Hagler v. Activ Enters., LLC*, No. 24-cv-00990-DSF-SK, 2024 WL 5375788, at *4 (C.D. Cal.

25   Nov. 22, 2024) (applying *Morales* to hold claims for failure to provide lawful meal and rest

26   periods under § 226.7 "do not fall under section 229"); *Torres-Boyd v. Thyssenkrupp Supply

27   Chain Servs. NA, Inc.*, No. 23-cv-01836-MMC, 2023 WL 7003242, at *5 (N.D. Cal. Oct. 23,

28   2023). And of the two cases since *Naranjo* which held otherwise, the first did not analyze why

1  *Naranjo* overruled *Lane* and the second did not state whether claims under § 226.7 were claims for
2  the collection of unpaid wages. *Neims v. Neovia Logistics Distrib., LP*, No. 23-cv-00716 PA
3  (SHKx), 2023 WL 6369780, at *5 (C.D. Cal. Aug. 10, 2023) (holding without analysis that under
4  *Naranjo*, missed breaks are unpaid wages under § 229); *Shanley v. Tracy Logistics LLC*, No. 24-
5  cv-01011-DC-JDP, 2025 WL 19012, at *8 (E.D. Cal. Jan. 2, 2025) (holding claims for failure to
6  provide meal breaks and rest breaks were claims "under that article" for purposes of § 229 but
7  failing to analyze or hold such claims were for unpaid wages).

8        Plaintiffs bring their ninth cause of action for unpaid vacation upon termination under
9  California Labor Code § 227.3.  Amplio only conclusorily argues Plaintiffs' ninth cause of action
10 under § 227.3 "falls outside of the scope of Section 229 because it does not seek wages." (*Id.* at
11 11.)  But it cites no authority that holds an action under § 227.3 is not an action "for the collection
12 of due and unpaid wages."  Cal. Lab. Code § 229.  By its plain language § 227.3 is about the
13 collection of unpaid wages; it provides that, upon termination, "all vested vacation shall be paid to
14 [the employee] as wages."  And the Labor Code defines wages as "'all amounts for labor
15 performed by employees of every description, whether the amount is fixed or ascertained by the
16 standard of time, task, piece, commission basis, or other method of calculation.'"  *Naranjo*, 13
17 Cal. 5th at 106 (quoting Cal. Lab. Code § 200(a)).  Since an action under § 227.3 is an action "to
18 enforce the provision of this article for the collection of due and unpaid wages," and Defendant
19 has not shown otherwise (indeed, Defendant conceded as much at oral argument), Plaintiffs' ninth
20 cause of action "may be maintained without regard to the existence of any private agreement to
21 arbitrate."  Cal. Lab. Code § 229.

22       Finally, Plaintiffs argue all claims are derivative of the non-arbitrable claims so that the
23 entire agreement falls under § 229.  But the only non-arbitrable claim is the ninth cause of action
24 for vacation pay.  And while some claims might be derivative of that claim, "Section 229 renders
25 the parties' arbitration agreement ineffective on [a plaintiff's] cause of action for unpaid wages,"
26 not the entire agreement.  *Muller*, 34 Cal. App. 5th at 1070.  Accordingly, § 229 does not make the
27 entire arbitration agreement ineffective.
28 //

**B. California Labor Code § 432.6**

California Labor Code § 432.6 prohibits an employer from requiring "as a condition of employment, continued employment, or the receipt of any employment-related benefit," that a person "waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act" or the Labor Code. But, § 432.6 "does not affect the enforceability of the resultant agreement to arbitrate." *Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 480 (9th Cir. 2023). In *Bonta*, California acknowledged and the Ninth Circuit reiterated that the statute does not on its own make arbitration agreements unenforceable; instead, it criminalizes and subjects employers to civil penalties for forcing employees to enter certain arbitration agreements. *Id.*; *see also id.* at 487 ("California argues that because [§ 432.6] regulates the conduct of employers before an arbitration agreement is formed, *rather than affecting the validity or enforceability of the executed arbitration agreement itself*, it does not conflict with the FAA.") (emphasis added). Accordingly, § 432.6 does not preclude enforcement of the arbitration agreement.

**III. Whether the Agreement is Unconscionable**

Finally, Plaintiffs argue the arbitration agreement is unenforceable as unconscionable. Under California law, plaintiffs seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). "California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021). Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power" whereas substantive unconscionability focuses "on overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).

**A. Procedural Unconscionability**

"Procedural unconscionability concerns the manner in which the contract was negotiated

and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (internal citations omitted); *see also Sanchez v. Valencia Holding Col, LLC*, 61 Cal. 4th 899, 910 (2015) (describing procedural unconscionability as focusing on "oppression or surprise due to unequal bargaining power.") (internal citation omitted). Under California law, "[t]he unconscionability analysis, therefore, 'begins with an inquiry into whether the contract is one of adhesion.'" *Bakersfield Coll. v. California Cmty. Coll. Athletic Assn.*, 41 Cal. App. 5th 753, 761 (2019) (quoting *Armendariz*, 24 Cal. 4th at 113 ).

Here, the agreement was an employment contract of adhesion, as Plaintiffs attest they were "not given the opportunity to negotiate the terms" of the agreement and it was presented to them "on a 'take it or leave [it]' basis." (Dkt. Nos. 17-1 ¶ 5, 17-2 ¶ 5.) The only way an employee can complete the onboarding process is "if the new employee accepts the Agreement through his or her account." (Dkt. No. 15-1 ¶ 22.) So, the arbitration agreement here "was an adhesion contract, because it was based on a standardized form, drafted and imposed by a party of superior bargaining strength, and left [Plaintiffs] with only the option of adhering to the contract or rejecting it (and losing" their job opportunity). *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012). And "[a] nonnegotiable contract of adhesion in the employment context is procedurally unconscionable." *Id.* (citations omitted).

However, Plaintiffs make no showing of oppression or surprise. Amplio attests signing the agreement is part of the onboarding process and an employee must scroll through to the bottom of the agreement before he can click to accept it. (Dkt. No. 15-1 ¶ 22.) The words noting the contract mandates arbitration of claims are bolded and written in all capital letters. (Dkt. Nos. 15-5; 15-2; 15-1 at 9-15.) "Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Ajamian*, 203 Cal. App. 4th at 796 (citing *Dotson v. Amgen, Inc.*, 18 Cal. App. 4th 975, 981-982 (2010)).

Because Plaintiffs' only argument as to procedural unconscionability is that the agreement is a contract of adhesion, procedural unconscionability is "low."

12

### B. Substantive Unconscionability

Under California law, "[s]ubstantive unconscionability focuses on the one-sidedness of the contract terms." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 114). Plaintiffs argue the agreement is substantively unconscionable because (1) the agreement is infinite as to scope; (2) the agreement is infinite as to duration; and (3) the agreement requires Plaintiffs to arbitrate against entities other than Amplio. (Dkt. No. 17 at 17-18.)

First, the agreement has a broad scope that goes beyond Plaintiffs' employment with Amplio. Specifically, covered claims are all claims (except for eight enumerated categories) which

> aris[e] out of or relat[e] to (a) Employee's application, hiring, hours worked, services provided, and/or employment with the Company or the termination thereof, and/or (b) a Company policy or practice, or the Company's relationship with or to a customer, vendor, or third party, including without limitation claims Employee may have against the Company and/or any Covered Parties (defined below), or that the Company may have against Employee.

(Dkt. No. 15-5 at 2.) Subsection (b) is overbroad: it requires Plaintiffs to arbitrate any claims arising out of Amplio's relationship with or to a customer, vendor, or third party. So, this provision necessarily includes claims "that are unrelated to [their] employment with" Amplio, such as if an Amplio driver hit a plaintiff walking down the street while the driver was delivering a package for a customer. So, the arbitration agreement is overbroad in scope. *Cook*, 102 Cal. App. 5th at 321-22.

Amplio insists that subsection (a)—covering claims arising out of a plaintiff's employment—distinguishes this agreement from that in *Cook* since the *Cook* agreement expressly stated "all claims, whether or not arising out of Employee's University employment" were subject to arbitration. *Id.* at 321. But while subsection (a) is limited to claims arising from employment, subsection (b) applies separate and apart from subsection (a) and is not limited to claims arising from employment: subsection (a) *or* subsection (b) can apply. (Dkt. No. 15-5 at 2.) So, the scope of the agreement is substantively unconscionable.

Second, the agreement mirrors the indefinite duration of the agreement in *Cook*, where the court held "the duration of the arbitration agreement is substantively unconscionable." *Id.* at 326 (analyzing the language "'shall survive the termination of Employee's employment, and may only

13

be revoked or modified in a written document that expressly refers to the "Agreement to Arbitrate Claims" and is signed by the President of the University.'"). The agreement expressly provides it "shall survive the termination of Employee's employment." (Dkt. No. 15-5 at 4.) Because the arbitration agreement applies indefinitely it is overbroad in duration. Further, the agreement here, unlike the agreement in *Cook*, has no provision for termination of the contract at all.

Third, the agreement requires arbitration of claims under subsection (b) as to "the Company or any Covered Parties." (Dkt. No. 15-5 at 2.) The agreement defines Covered Parties as,

> the Company, any entity formerly or currently owned, affiliated, controlled or operated by the Company (a "company entity"), clients of the Company or a company entity, and the former and current officers, directors, managers, employees, owners, attorneys, agents, and vendors of the Company and/or a company entity and/or clients of the Company.

(*Id.*) *Cook* held similar language lacks mutuality because it "provides benefits to broad swaths of third-party beneficiaries only in favor of [the employer] without any showing of justification for this one-sided treatment." *Cook*, 102 Cal. App. 5th at 327. This lack of mutuality is particularly glaring here since subsection (b) is not limited to Plaintiffs' employment with Amplio. (Dkt. No. 15-5 at 2.) So, "[t]he plain language of the arbitration agreement thus provides a significant benefit to [Amplio's] related entities without any reciprocal benefit to [Plaintiffs]." *Cook*, 102 Cal. App. 5th at 328. Accordingly, the agreement is substantively unconscionable for lack of mutuality for claims subject to arbitration as to third parties.

### C. Severability

"[A] court should sever an unconscionable provision unless the agreement is so permeated by unconscionability that it cannot be cured by severance." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 183-84 (2015) (cleaned up). "The presence of a severability clause makes severance more feasible." *Pereyra v. Guaranteed Rate, Inc.*, No. 18-cv-06669-EMC, 2019 WL 2716519, at *10 (N.D. Cal. June 28, 2019). The arbitration agreement includes a severability clause:

> If any provision of this Agreement to arbitrate is adjudged to be void or otherwise unenforceable, in whole or in part, the void or unenforceable provision shall be severed and such adjudication shall

14

not affect the validity of the remainder of this Agreement to arbitrate

(Dkt. No. 15-5 at 4.) In determining whether to sever unconscionable provisions, "the dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) (quoting *Marathon Entm't*, 42 Cal. 4th 974, 996 (2008)).

Most of the substantive unconscionability can be cured by severing subsection (b) which extends arbitrability to claims unrelated to Plaintiffs' employment with Amplio. Severance of subsection (b) also addresses the unlimited duration issue because the statute of limitations would put an end point on the agreement: employment-related claims would eventually be time-barred. The unconscionability of the lack of mutuality is also largely cured by ridding the agreement of applying to claims outside of Plaintiffs' employment. And subsection (b) does not so taint the arbitration agreement with illegality that there is no lawful object of the agreement to enforce. An employment-related arbitration agreement—the central purpose of the agreement—is a lawful objective under California law.

Although Amplio argued in its opening brief that any unconscionable provisions are severable (Dkt. No. 15 at 18-19), Plaintiffs' opposition did not address severability. At oral argument, all Plaintiffs could muster is that if subsection (b) is severed, the agreement would still be procedurally unconscionable as a contract of adhesion. But such argument does not defeat severing subsection (b)—the subsection that renders the agreement substantively unconscionable. *See Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 185 (2015) (holding a lower court properly severed substantively unconscionable provisions even when there was contract of adhesion procedural unconscionability).

\*   \*   \*

If "there is no other indication of oppression or surprise, [and] the degree of procedural unconscionability of an adhesion agreement is low, . . . the agreement will be enforceable unless the degree of substantive unconscionability is high." *Ajamian*, 203 Cal. App. 4th at 796 (citing *Dotson*, 18 Cal. App. 4th at 981-982 (2010)). Since the Court can sever subsection (b), the substantive unconscionability of the arbitration agreement is low at most. So, as the degree of

15

procedural unconscionability is also low, the agreement is not unenforceable as unconscionable.

## IV. Class Waiver Provision

The arbitration agreement, which the Court has determined is enforceable as to all claims except for the ninth cause of action for vacation pay, includes a class action waiver:

> [Each party] expressly intends and agrees, to the absolute maximum extent permitted by law, that: (a) class action, collective action, or consolidated action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (b) representative action procedures are hereby waived and shall not be asserted in arbitration or in court, nor will they apply in any arbitration pursuant to this Agreement; (c) each will not assert class action, collective action, consolidated action or representative action claims against the other in arbitration or court or otherwise; and (d) the Employee and the Company shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person. No arbitrator selected to arbitrate any claim covered by this Agreement is authorized to arbitrate any claim on a class, collective, consolidated, or representative basis.

(Dkt. No. 15-2 at 3.) And despite the agreement's delegation of other questions, it provides "a court of law must resolve any dispute concerning … the validity, enforceability or interpretation of the provisions pertaining to class, collective, and representative action waivers." (*Id.*) So, the availability of class-wide relief is a question for the Court to decide.

When, as here, an agreement with a class waiver is governed by California law rather than the FAA, such waivers may be unenforceable. *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 845 (2015). Under what is known as "the *Gentry* rule", a court considers the following four factors to determine whether a class waiver provision is unenforceable:

> [1] the modest size of the potential individual recovery,
> [2] the potential for retaliation against members of the class,
> [3] the fact that absent members of the class may be ill informed about their rights, and
> [4] other real[-]world obstacles to the vindication of class members' rights to overtime pay through individual arbitration.

*Id.* (quoting *Gentry v. Air Liquide Indus. U.S. LP*, 42 Cal. 4th 443, 453 (2007)). The *Gentry* rule does not invalidate arbitration agreements; instead, it guides whether class waivers are enforceable whether the claims are in court or arbitration. *Id.* (citing *Gentry*, 42 Cal. 4th at 453). So, the Court must determine whether the class waiver is enforceable for all claims.

16

1    The first factor is met. Plaintiffs' counsel attests the maximum recovery for Plaintiff
2 Bahamonde is $5,403.50 and for Plaintiff Sanders is $17,311.25. (Dkt. No. 17-3 ¶¶ 1-2.)[3] These
3 amounts are lower than other individual award calculations courts have found meet the first
4 *Gentry* factor. *See, e.g.*, *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th 784, 793 (2018)
5 (finding $26,000 was adequate under *Gentry*); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715,
6 745 (2004) (cited by the *Gentry* Court with approval as to its discussion that a potential award of
7 $37,000 was not "large enough to provide an incentive for individual action" when considering the
8 costs of litigating such claims).

9    The second factor is also met. Plaintiff Sanders, who worked at Amplio for approximately
10 two years, attests she "know[s] from firsthand experience that none of my coworkers would feel
11 comfortable reporting these policies if they knew about them too." (Dkt. No. 17-1 ¶ 8.) And she
12 further testifies she spoke with other coworkers who also complained about working conditions
13 but never complained to management. (*Id.*) Plaintiff Bahamonde repeats the same attestation in
14 his declaration, though the Court does not accord it much weight since (1) he only worked at
15 Amplio for a few days and (2) his declaration is word-for-word the same as Plaintiff Sanders'
16 declaration. (Dkt. No. 17-2 ¶ 8.) Even so, as the *Gentry* court explained, "retaining one's
17 employment while bringing formal legal action against one's employer is not 'a viable option for
18 many employees.'" *Gentry*, 42 Cal. 4th at 459 (quoting *Richards v. CH2M Hill, Inc.*, 26 Cal.4th
19 798, 821 (2001)). And though neither Plaintiff is an Amplio current employee, courts recognize
20 this "simply strengthens [their] status as the representative in a *class* action or *class* arbitration
21 because it is reasonably presumed potential class members *still employed* by [the] employer might
22 be unwilling to sue individually or join a suit for fear of retaliation at their jobs." *Franco v.*
23 *Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1296 (2009), *as modified* (Mar. 18, 2009) (cleaned
24 up).

---

[3] Amplio cites *Romero v. Watkins & Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2 (9th Cir. Aug. 19, 2021), for the proposition counsel's declaration is insufficient. But the *Romero* plaintiff submitted no evidence, not even sworn attestations, to support the calculations. Under California law, "attorney declarations presenting such estimates, and awards as large as $37,000, have been found to satisfy the first *Gentry* factor." *Betancourt v. Transp. Brokerage Specialists, Inc.*, 62 Cal. App. 5th 552, 561 (2021).

17

1        The third factor is also met.  Plaintiffs both attest they were not informed of a formal
2   complaint procedure and that they did not know their rights under California law.  (Dkt. No. 17-1
3   ¶ 6.)  They both relate the same experience: "none of my coworkers knew that not recording all
4   hours that were worked was illegal, because while we did believe this was extremely unfair, we
5   were repeatedly told by our supervisors this is the way things were done and to suck it up,
6   otherwise they would find people who would."  (Dkt. No. 17-1 ¶ 8; Dkt. No. 17-2 ¶ 8.)  It is
7   unclear how Plaintiff Bahamonde knew of or was told this information given he did not go beyond
8   training in his short employment at Amplio.  (Dkt. No. 18-1 ¶ 2.)  Even so, Plaintiff Sanders spent
9   at least two years at Amplio and can adequately attest to her experiences during her employment.
10  Amplio counters by providing a copy of its employee handbook, which recites employee wage and
11  hour rights.  (*See, e.g.* Dkt. No. 15-7 at 14-17.)  Even so, "[a]lthough the employee handbook may
12  inform employees of their legal rights, the immediate pressure placed on [Plaintiff Sanders] by
13  [her] supervisor to, in essence, forgo those rights, suggests to the Court that [she] and likely other
14  class-members are misinformed of their rights."  *Webb v. Rejoice Delivers LLC*, No. 22-cv-07221-
15  BLF, 2023 WL 8438577, at *11 (N.D. Cal. Dec. 5, 2023), *appeal dismissed sub nom. Webb v.*
16  *Amazon Logistics, Inc.*, No. 24-120, 2024 WL 3321502 (9th Cir. May 20, 2024).  Beyond the
17  employee handbook, Amplio provides no evidence to contradict Plaintiffs' assertions that
18  employees were both ill-informed of their rights and were pressured to forgo their rights.
19       Plaintiffs make no factual showing as to the fourth factor.  They argue generally they are
20  low-wage employees and that individual resolution is inefficient in wage and hour cases, but make
21  "no particularized showing as to other real-world obstacles, and [their] argument amounts to a
22  general conclusion that class action waivers inhibit claims."  *Webb*, 2023 WL 8438577, at *11
23  (cleaned up).  Plaintiffs' declarations show they are not minimum wage workers and they offer no
24  evidence about Amplio's size or how many potential class members there may be such that
25  individual resolution would be inefficient.  So, this factor weighs in Amplio's favor.
26                                    *     *     *
27       In light of the three of the four *Gentry* factors that are met, "a class proceeding would be a
28  significantly more effective way of permitting the employees to enforce their statutory rights" so

United States District Court
Northern District of California

the class waiver is unenforceable under California law. *Muro*, 20 Cal. App. 5th at 795. So, the Court invalidates the class action waiver.

### V. Stay Pending Completion of Arbitration

"If a court of competent jurisdiction, whether in this State or not, has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." Cal. Civ. Proc. § 1281.4. Amplio requests the Court stay litigation pending arbitration of any claims it finds are subject to arbitration. Plaintiffs make no argument as to whether the Court should implement a stay. The Court STAYS litigation of claims compelled to arbitration during the pendency of arbitration of those claims.

### CONCLUSION

For the reasons stated above, the Court GRANTS Amplio's motion to compel as to all of Plaintiffs' causes of action except their ninth cause of action for unpaid vacation upon termination under California Labor Code § 227.3. And the class action waiver is deemed unenforceable. Further, at Amplio's request, the Court STAYS this matter as to all of the causes of action compelled to arbitration pending completion of arbitration. *See* Cal. Civ. Proc. Code § 1281.4. The parties' briefs did not address how to proceed if not all claims are compelled to arbitration; accordingly, the July 30, 2025 case management conference remains on calendar. Further, the parties are ordered to meet and confer and file a joint statement a week in advance of the hearing indicating each parties' position on how to proceed on the ninth cause of action.

This Order disposes of Docket No. 15.

**IT IS SO ORDERED.**

Dated: July 18, 2025

JACQUELINE SCOTT CORLEY
United States District Judge